IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LIBERTY SURPLUS INSURANCE CORPORATION, | § § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION NO. H-18-1444 |
| CENTURY SURETY COMPANY, DESCON CONSTRUCTION, L.P., and CITY OF EDINBURG, | § § § § § | |
| Defendants. | § § | |

**MEMORANDUM AND ORDER**

This insurance-coverage dispute arises out of the construction of a public library in Edinburg, Texas. The City of Edinburg sued the general contractor, Descon Construction, L.P., in Texas state court, alleging breach of contract, breach of warranties, and negligence. The state court referred the case to arbitration under the parties' contract. The tribunal found that Descon Construction and a subcontractor hired to install the library roof, McAllen Steel Erectors, Inc., were liable for breaching contractual and warranty obligations. Edinburg received a $1.5 million award.

Descon Construction asked Liberty Surplus Insurance Corporation to cover the award under four commercial general liability policies that Liberty had issued Descon Construction for the library construction. Liberty refused. Seeking a declaration that its policies do not cover the award, Liberty sued Descon Construction, Edinburg, and Century Surety Company, McAllen Steel's commercial general liability insurer. Liberty has moved for summary judgment, arguing that its policies do not cover the award or, alternatively, that Century must cover the award because the arbitration panel found that McAllen Steel was liable to Edinburg. Edinburg has

cross-moved for a declaratory judgment that Liberty's policies cover the award, and Century has cross-moved for a declaratory judgment that its policy does not apply.

Based on the pleadings, the motions and responses, the supplemental briefing, the record, the arguments of counsel, and the applicable law, the court finds that Liberty's policies cover only the arbitration award for the costs of repairing or replacing ceiling tiles, not for repairing or replacing the roof or exterior stucco. Liberty's summary judgment motion is granted in part and denied in part. (Docket Entry Nos. 36, 41). Edinburg's cross-motion is denied, with prejudice, as to coverage; the motion is denied, without prejudice, as to the amount of Liberty's liability for ceiling-tile damages. (Docket Entry No. 45). Century's cross-motion is denied as moot. (Docket Entry No. 44). The parties must submit an amended joint scheduling and docket control order setting out a discovery and dispositive-motion briefing schedule on the limited issue of damages for the ceiling tiles, and submit a stipulation as to the amount, by **August 9, 2019**. The joint proposed discovery plan must include a limit on the number of depositions and written interrogatories. The parties must appear for a status conference on **August 23, 2019 at 2:00 p.m.**

The reasons for these rulings are set out in detail below.

## I. Background

### A. The Arbitration Award

In January 2006, Descon Construction contracted with the City of Edinburg to build the Dustin Michael Sekula Memorial Library. (Docket Entry No. 36-15 at 1). Descon Construction subcontracted with McAllen Steel Erectors to install the library metal roof. (*Id.*). The library was "[s]ubstantial[ly] completed" in March 2007. (*Id.*). The roof began to leak within "two months of occupancy." (*Id.*). Edinburg reported the leaks to Descon Construction and, though

"multiple efforts were made to correct the leaking conditions, [the leaks] continued unabated for seven years." (*Id*).

In August 2014, Edinburg sued Descon Construction in Texas state court, and the case was referred to arbitration under the parties' January 2006 contract. (*Id.* at 2). Edinburg submitted a claim to the American Arbitration Association in July 2016, asserting breach of contract, breach of warranties, and negligence based, in part, on 20 alleged roof defects. (*Id.* at 2, A-1–A-2).

The arbitration panel found that the library roof was "defective"; "the exterior stucco system was defectively installed"; and certain work, including fire-caulking, had not been performed. (*Id.* at 6–7). The panel concluded that Descon Construction was liable for breach of contract and breach of warranty:

> Descon's failure to follow the plans, failure to perform work in a workmanlike manner, performance of work that violated Code requirements, and failure to furnish a written warranty on the roof, constitutes a breach of its contractual obligations to [Edinburg]. Moreover, the Panel would point out that [Edinburg] afforded Descon seven years to cure the roof leaks before taking legal action. Had Descon constructed the roof to the plans, and the failure was solely a design defect, then the furnishing of defective plans by [Edinburg] would have been a material breach, but that was not the case. In making this Award, the Panel finds that [Edinburg] is entitled to replacement of the existing roof with one of like kind and quality as specified in the original plans, and that replacing the roof with a different roofing system would constitute a betterment.

(*Id.* at 6).[1] The panel itemized Edinburg's damages:

| | | |
|---|---|---|
| a. | General Conditions | $ 78,500.00 |
| b. | Stucco Repair | $ 46,049.00 |
| c. | Fire-rated partitions (caulk) | $ 200.00 |
| d. | Roof replacement including structural repairs and ceiling tiles | $ 364,556.00 |
| e. | Contractor fee | $ 39,144.00 |
| f. | Contingency | $ 52,845.00 |

---

[1] The panel held that Edinburg's negligence claim was foreclosed by the economic-loss doctrine. (*Id.* at 7).

3

|   |   |   |
|---|---|---|
| g. | Attorney's fees | $ 699,913.00 |
| h. | Consulting fees and expenses | $ 118,348.00 |
| i. | Prejudgment interest | $ 106,544.94 |
|   | Total - | $1,506,099.94 |

(*Id.* at 7–8).

The panel also found that McAllen Steel breached its subcontract with Descon Construction by defectively installing the roof, entitling Descon Construction to recover $762,537.36 from McAllen Steel. The panel itemized these damages as follows:

|   |   |   |
|---|---|---|
| a. | General Conditions | $ 69,661.00 |
| b. | Roof replacement including structural repairs and ceiling tiles | $ 364,556.00 |
| c. | Contractor fee | $ 34,736.00 |
| d. | Contingency | $ 46,895.00 |
| e. | Attorney's fees | $ 208,109.00 |
| f. | Prejudgment interest | $ 38,580.36 |
|   | Total - | $ 762,537.36 |

(*Id.* at 7–8).

Descon Construction asked Liberty to cover the award in April 2018. (Docket Entry No. 36 at 7). Liberty refused, and this litigation followed. (*Id.*; Docket Entry No. 1).

**B.     The Policies' Terms**

Liberty issued Descon Construction four commercial general liability policies, effective from April 2005 to April 2009. The policies each has limits of $1 million per occurrence and $2 million in the aggregate and each requires Liberty to "pay those sums . . . that [Descon Construction] becomes legally obligated to pay as damages because of . . . 'property damage.'" (Docket Entry No. 36-2 at 4). "Property damage" is defined as "[p]hysical injury to tangible property, including all resulting loss of use of that property"; and "[l]oss of use of tangible property that is not physically injured." (*Id.* at 23). The policies cover "property damage" if it

4

occurred during the policy period and was caused by an "occurrence" or "accident." (*Id.* at 4, 22).

Century insured McAllen Steel under a similar commercial general liability insurance policy, with limits of $1 million per occurrence and $2 million in the aggregate, from February 2006 to February 2007. (Docket Entry No. 44-4). The policy contains an endorsement naming Descon Construction as an additional insured. (*Id.* at 60).

### C. Procedural History

Liberty sued Descon Construction, Edinburg, and Century in May 2018, seeking declaratory relief that its policies do not cover the award. (Docket Entry No. 1). Edinburg and Century answered, counterclaimed, and crossclaimed. (Docket Entry Nos. 7, 10). In January 2019, Liberty moved for summary judgment, arguing that the award does not include covered "property damage" and, even if it did, the policies exclude coverage. (Docket Entry Nos. 36, 41). Liberty contends that if it is liable for the award, Century must pay under its policy with McAllen Steel, which named Descon Construction as an additional insured. Edinburg cross-moved for summary judgment that Liberty is liable because some of the award damages are covered and no exclusion applies. (Docket Entry No. 45). Century also cross-moved for summary judgment that its policy does not cover the damages Descon Construction owes under the award. (Docket Entry No. 44). Liberty responded, the parties filed supplemental briefs, and the court heard argument. (Docket Entry Nos. 50, 51, 54, 55, 56).

## II. The Legal Standards

### A. Summary Judgment

"Summary judgment is appropriate only when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"

*Shepherd on Behalf of Estate of Shepherd v. City of Shreveport*, 920 F.3d 278, 282–83 (5th Cir. 2019) (quoting FED. R. CIV. P. 56(a)). "A 'material' fact is one that might affect the outcome of the suit under governing law," and "a fact issue is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 611 (5th Cir. 2018) (quotations and citations omitted). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion," and identifying the record evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Where the non-movant bears the burden of proof at trial, 'the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating that there is an issue of material fact warranting trial.'" *Kim v. Hospira, Inc.*, 709 F. App'x 287, 288 (5th Cir. 2018) (alteration omitted) (quoting *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)). The moving party must demonstrate the absence of a genuine issue of material fact, but it need not negate the elements of the nonmovant's case. *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017). "If the moving party fails to meet [its] initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001)).

"When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). The nonmovant must identify specific evidence in the record and "articulate the precise manner in which that evidence support[s]" that party's claim. *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (quoting *Forsyth v. Barr*,

19 F.3d 1527, 1537 (5th Cir. 1994)). "A party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Lamb v. Ashford Place Apartments L.L.C.*, 914 F.3d 940, 946 (5th Cir. 2019) (quotation omitted). "A failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006).

### B. Interpreting Insurance Policies Under Texas Law

General contract-interpretation principles apply to insurance policies, focusing on the parties' intent as written in the contract. *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 257–58 (Tex. 2017) (citing *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010)); *see also Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 746 (Tex. 2006) ("[T]he parties' intent is governed by what they said, not what they intended to say but did not."). Because "[c]ontext is important," the court considers the document holistically and avoids isolating or rendering meaningless particular sections. *Exxon Mobil Corp. v. Ins. Co. of Pa.*, 568 S.W.3d 650, 657 (Tex. 2019) (citing *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex. 1994)). The policy's terms are given their plain meaning unless they are otherwise defined in the agreement. *Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 893 (Tex. 2017) ("'Plain meaning' is a watchword for contract interpretation.").

Ambiguous insurance policies are interpreted in the insured's favor to give her the coverage she reasonably thought she bargained for. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co., Inc.*, 811 S.W.2d 552, 555 (Tex. 1991). Whether a policy is ambiguous is a matter of law. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003). A policy is ambiguous only "if it is genuinely subject to more than one meaning after

7

applying the pertinent rules of contract interpretation." *Nassar*, 508 S.W.3d at 258 (citing *RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 119 (Tex. 2015)); *see also Primo*, 512 S.W.3d at 893 ("An ambiguity does not arise merely because a party offers an alternative conflicting interpretation.").

The insured has the initial burden of pleading and proving that the benefits sought are covered by the policy. *Dall. Nat'l Ins. Co. v. Calitex Corp.*, 458 S.W.3d 210, 222 (Tex. App.—Dallas 2015, no pet.) (citing *Mid-Continent Cas. Co. v. Castagna*, 410 S.W.3d 445, 450 (Tex. App.—Dallas 2013, pet. denied)). If that burden is met, the insurer must show that one of the policy's limitations or exclusions applies, precluding coverage. *Id.* Once the insurer demonstrates that an exclusion applies, the burden shifts back to the insured to show that the claim does not fall within the exclusion or that it comes within an exception to the exclusion. *See Cent. Sur. Co. v. Hardscape Constr. Specialties, Inc.*, 578 F.3d 262, 265 (5th Cir. 2009).

An insurance policy ordinarily imposes two "distinct and separate" duties on the insurer—the duty to defend and the duty to indemnify. *D.R. Horton-Tex., Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743 (Tex. 2009). "The duty to defend means the insurer will defend the insured in any lawsuit that 'alleges and seeks damages for an event potentially covered by the policy,' while the duty to indemnify means the insurer will 'pay all covered claims and judgments against an insured.'" *Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 253–54 (5th Cir. 2011) (quoting *D.R. Horton*, 300 S.W.3d at 743). This case centers on the duty to indemnify.

"[A]n insurer's duty to indemnify generally cannot be ascertained until the completion of litigation, when [the insured's] liability is established, if at all." *Id.* at 253. The duty "depends on the facts proven [at trial] and whether the damages caused by the actions or omissions proven

are covered by the terms of the policy." *D.R. Horton*, 300 S.W.3d at 744. But if the underlying suit "never goes to trial or if trial does not develop the facts necessary to determine policy coverage," the "parties may offer extrinsic evidence" to resolve the insurer's duty to indemnify. *Hartford Cas. Ins. Co. v. DP Eng'g, L.L.C.*, 827 F.3d 423, 430 (5th Cir. 2016). The court is authorized to make factual findings necessary to resolve coverage. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Puget Plastics Corp.*, 532 F.3d 398, 404 (5th Cir. 2008).

## III. Analysis

Liberty and Edinburg disagree over whether Liberty must pay $687,638.94 in damages for: "[g]eneral [c]onditions," $78,500; "[r]oof replacement including structural repairs and ceiling tiles," $364,556; "[c]ontractor fee," $39,144; "[c]ontingency," $52,845; "[s]tucco [r]epairs," $46,049; and "[p]rejudgment interest," $106,544.94.[2] (Docket Entry No. 45 at 10; Docket Entry No. 36-15 at 7–8). The parties agree that "[g]eneral [c]onditions," "[c]ontractor fee," and "[c]ontingency" are "all necessary expenses associated with hiring a contractor to perform roof replacement." (Docket Entry No. 45 at 7; Docket Entry No. 36 at 6; Docket Entry No. 44 at 3). The parties dispute whether Liberty's policies cover these damages.

Liberty is liable for "those sums that [Descon Construction] becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies." (Docket Entry No. 36-2 at 4). The policies define "property damage" as "[p]hysical injury to tangible property, including all resulting use of that property," and "[l]oss of use of tangible property that is not physically injured." (*Id.* at 23). An "occurrence" must cause "property damage" during the policy period to trigger coverage. (*Id.* at 4). The parties agree that defective roof and

---

[2] Edinburg does not argue that Liberty is liable for arbitration-award damages related to "[f]ire-rated partitions (caulk)," $200.00; attorney's fees, $699,913; and "[c]onsulting fees and expenses," $118,348, conceding that those damages are not at issue. (*See* Docket Entry No. 45 at 7, 21).

exterior stucco installations were "occurrences" under the policies. The question is whether Liberty's policies cover only: (1) "property damage" caused by the defective roof and stucco, as Liberty and Century argue; or whether the policies cover both (1) "property damage" caused by the defective roof and stucco *and* (2) the cost of repairing the roof and stucco, as Edinburg argues.

### A. Texas Law Interpreting Commercial General Liability Policies

Extensive case law governs commercial general liability insurance policies, which are standardized and widely used throughout the United States. *See, e.g.*, *Essex Ins. Co. v. Hines*, 358 F. App'x 596, 599 (5th Cir. 2010)). In *Lamar Homes, Inc. v. Mid-Continent Casualty Company*, 242 S.W.3d 1, 4 (2007), the Texas Supreme Court considered the definition of "property damage" in a commercial general liability policy. In the underlying litigation, homeowners sued Lamar, the homebuilder, and its subcontractor, alleging that negligent design and construction of the house foundation caused the house's sheetrock and stone veneer to crack. *Id.* at 10. Lamar asked its insurer, Mid-Continent, to defend the suit and for indemnification under the commercial general liability policy. *Id.* at 5. Mid-Continent refused, and Lamar sued for declaratory relief. *Id.*

The district court granted summary judgment for Mid-Continent, reasoning that commercial general liability policies "protect the insured from liability resulting from property damage (or bodily injury) caused by the insured's product, but not for the replacement or repair of that product." *Lamar Homes, Inc. v Mid-Continent Cas. Co.*, 335 F. Supp. 2d 754, 759 (W.D. Tex. 2004) (quotation omitted). On appeal, the Fifth Circuit certified three questions to the Texas Supreme Court, one of which is relevant to this case: "When a homebuyer sues his general contractor for construction defects and alleges only damage to or loss of use of the home itself,

do such allegations allege 'property damage' sufficient to trigger the duty to defend or indemnify under a [commercial general liability] policy?" *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 428 F.3d 193, 200–201 (5th Cir. 2005).

The Texas Supreme Court held that the definition of "property damage"—"physical injury to tangible property"—included the general contractor's work. *Lamar Homes*, 242 S.W.3d at 10. The court explained that the "home and its component parts are clearly 'tangible property,'" and that "allegations of cracking sheetrock and stone veneer are allegations of 'physical injury' to 'tangible property.'" *Id*. Even though the court found that Mid-Continent owed a duty to defend under the policy, it noted that there was some basis

> for the district court's assumption that [commercial general liability] insurance is not for the repair or replacement of the insured's defective work. The assumption proves true in many cases because several acts of faulty workmanship do not fall within coverage, either because they are not an "occurrence," "accident," or "property damage," or they are excluded from coverage by specific exclusions. For example, faulty workmanship that is intentional from the viewpoint of the insured is not an "accident" or "occurrence," and faulty workmanship that merely diminishes the value of the home without causing physical injury or loss of use does not involve "property damage."

*Id*. The Texas Supreme Court did not clarify, however, whether a contractor's defective performance—and not just the damage caused by the defective performance—could be covered "damages because of property damage" under the standard-form commercial general liability policy.

In *Lennar Corp. v. Great American Insurance Co.*, 200 S.W.3d 651, 677 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) ("*Lennar I*"), the Texas Court of Appeals considered whether a homebuilder's claims for losses from defective exterior insulation were covered "property damage" under a commercial general liability policy. The homebuilder, Lennar, built over 400 homes with insulation that caused wood rot, mold, and termite infestation, among other

11

water damage. *Id.* at 661. After receiving some complaints from homeowners, Lennar repaired insulation-related damage and replaced the defective insulation from all the homes, even those that had not sustained water damage. *Id.* Lennar then asked its insurers to cover the remediation costs. *Id.* They refused, arguing that the cost of replacing the insulation was not covered "damages because of . . . property damage." *Id.* at 678.

The court distinguished among three categories of damages: (1) the cost to remediate insulation-related damage; (2) the cost to remove and replace the insulation as a preventive measure; and (3) ancillary costs, including overhead, inspections, personnel, and attorney's fees. *Id.* at 677. The court held that the first category was covered "property damage," but that the second and third were not. *Id.* at 677–81. The cost of removing and replacing the defective insulation to prevent home damage was not covered, because the insulation "was not physically injured after application to the homes." *Id*. at 678. The insulation "was not changed from a satisfactory state into an unsatisfactory state, or otherwise physically altered," but instead was "already in an unsatisfactory state when applied to the homes because it [was] inherently defective." *Id.* at 678–79. Even though "Lennar arguably made a good business decision to remove and replace all the [insulation] to prevent further damage," the court could not "conclude that it was necessary for Lennar to remove and replace all the [insulation] to repair the water damage, if any, to each home." *Id*. As a result, the cost of replacing the insulation as a preventative measure was not covered "damages because of . . . property damage." *Id*. The court affirmed summary judgment for all but two of Lennar's insurers, American Dynasty Surplus Lines Insurance Company and Markel American Insurance Company.

On remand, Lennar settled with American Dynasty and proceeded to trial against Markel. *Markel Am. Ins. Co. v. Lennar Corp.*, 342 S.W.3d 704, 707 (Tex. App.—Houston [14th Dist.]

12

2011) ("*Lennar II*"). Lennar presented evidence that it had to remove insulation to locate and repair water damage. *Id.* at 711. Over Markel's objection, the court asked the jury to determine the "cost to remove and replace the [insulation] in order to access and repair underlying water damage or in order to determine the areas of underlying water damage." *Id.* at 710. Lennar submitted evidence of the cost to repair damaged homes; the company did not seek recovery for homes that had the insulation but did not sustain water damage. The jury returned a verdict in Lennar's favor based on its need to remove the insulation to repair water damage. *Id.* at 708. Markel appealed. *Id.* at 707. Reasoning that Lennar's evidence failed to show "damages because of property damage" under *Lennar I*, the Texas Court of Appeals vacated the verdict and entered judgment for Markel. *Id.* at 711.

The Texas Supreme Court reversed, holding that "Lennar's evidence supported the jury's verdict." *Lennar Corp. v. Markel Am. Ins. Co.*, 413 S.W.3d 750, 758 (Tex. 2013) ("*Lennar III*"). The court "noted that the phrase, 'because of,' used in determining a covered loss under a commercial general liability policy, 'is susceptible to a broad definition.'" *Id.* at 757 (quoting *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 499 (Tex. 2008)). At trial, Lennar had established that it could not locate or fix water damage without replacing the defective insulation. *Id.* Because Lennar asked the jury to consider only the cost of replacing the insulation from damaged homes, not the cost to replace the insulation as a preventative measure, as in *Lennar I*, the Texas Supreme Court ruled that the cost of finding insulation-related damage in order to repair that damage was covered "damages because of property damage" under Markel's policy. *Id.*

*Crownover v. Mid-Continent Casualty Company*, 772 F.3d 197 (5th Cir. 2014), is also instructive. The Crownovers hired a contractor, Arrow, to build their home. *Id.* at 199. Cracks

began to show in the walls and foundation shortly after Arrow completed construction, and "problems with the [air-conditioning] system caused leaking in exterior lines and ducts inside the home." *Id.* The air-conditioning system ran continuously to compensate for the leaks, requiring the stressed unit to be replaced. *Id.* After Arrow refused to repair the damage, the Crownovers filed an arbitration claim. *Id.* at 200. The arbitrator awarded the Crownovers damages based on findings that "the foundation had failed" and that the air-conditioning unit "was not installed properly." *Id.* Mid-Continent, Arrow's insurer, refused to indemnify the Crownovers, who then filed suit in federal court. *Id.* The court granted summary judgment for Mid-Continent, and the Crownovers appealed. *Id.* at 200–01. The Fifth Circuit rejected Mid-Continent's argument that the arbitration damages were not covered "damages because of property damage" under the commercial general liability policy. *Id.* at 206. The court held that the defectively installed air-conditioning unit was "tangible property" and that "the loss of [its] use amounted to property damage." *Id.* at 207.

### B. Whether Liberty's Policies Cover the Roof- and Stucco-Repair Damages Awarded in Arbitration

Liberty and Century argue that these cases stand for the proposition that "[d]efective work in and of itself is not 'property damage' under Texas law." (*See* Docket Entry No. 55 at 2). They contend that because Edinburg seeks coverage for the cost of fixing defective work, Liberty's policies do not cover any arbitration-award damages. (*Id.* at 7). Edinburg responds that the cost of repairing faulty workmanship is covered if "the faulty workmanship results in 'physical injury' to tangible property." (Docket Entry No. 54 at 1). According to Edinburg, the defective roof caused interior water damage and, as a result, Liberty must cover the award damages for roof- and stucco-repair costs. (*Id.*). Edinburg also argues that because the library

has sustained—and will continue to sustain—water damage until the roof is replaced, *Lennar III* and *Crownover* require Liberty to pay for roof-replacement costs. (*Id.* at 5).

*Lamar Homes* establishes that defective work may give rise to damages covered by a commercial general liability policy. *Lamar Homes*, 242 S.W.3d at 16. In *Lennar III* and *Crownover*, the policies covered defective work because the defective work itself had sustained damage, or fixing the work was necessary to find and repair other covered "property damage." *Crownover*, 772 F.3d at 206–07; *Lennar III*, 413 S.W.3d at 757–58. By comparison, in *Lennar I*, fixing faulty workmanship to prevent damage was not covered, because the defective work had not been "otherwise physically altered," and because the defect had not caused other covered "property damage." *Lennar I*, 200 S.W.3d at 678–79.

Contrary to Edinburg's arguments, *Lennar III* and *Crownover* are distinguishable from the present case. As the parties observe, the arbitration panel in this case did award damages to repair or replace ceiling tiles caused by the roof leaks.[3] (Docket Entry No. 36-15 at 7–8; Docket Entry No. 50 at 12). But unlike the water damage in *Lennar III*, which could not be found or repaired without removing the homes' exterior stucco, library staff could see ceiling tiles with water stains. (Docket Entry No. 45-3 at 7). These stains showed which tiles were damaged and might collapse. (*Id.*). Library employees would use a lift to replace the waterlogged tiles, showing that removing or replacing the defective roof was not necessary to find or fix damaged tiles. (*Id.*). And unlike the air-conditioning unit in *Crownover*, the arbitrators found that the library roof and stucco were themselves defective, not that they were damaged or unusable because of other defective work. (Docket Entry No. 36-15 at 7–8). These cases do not support a finding that Liberty's policies cover the stucco- or roof-repair costs.

---

[3] The panel did not award damages based on problems caused by the defective stucco. (Docket Entry No. 36-15 at 7–8).

Edinburg contends that the repair costs are covered under *Crownover* because testimony during the arbitration proceeding showed that roof leaks required library staff to cordon off areas of the library. (Docket Entry No. 54 at 3). This argument conflates the duty to defend, which is based on the underlying complaint allegations, and the duty to indemnify, which is based on the facts established in the underlying litigation. *D.R. Horton*, 300 S.W.3d at 744. The arbitration award does not include loss-of-use damages, indicating that the panel rejected Edinburg's evidence as a basis to award damages. Liberty is required to cover only "those sums . . . that [Descon Construction is] legally obligated to pay as damages because of 'property damage,'" (Docket Entry No. 36-2 at 4), precluding coverage on the basis of lost use.

Edinburg's rip-and-tear theory fails for the same reasons. According to Edinburg, the policies cover roof-repair costs because replacing the roof will damage the library structure. *See U.S. Metals, Inc. v. Liberty Mut. Grp., Inc.*, 490 S.W.3d 20, 28 (Tex. 2015) (awarding rip-and-tear damages because the record showed that replacing a defective part damaged the machine in which it was installed). Edinburg contends that the $52,845 in "[c]ontingency" damages the arbitration panel awarded "addresses the unforeseen damages and circumstances that arise from the roof removal." (Docket Entry No. 54 at 9). The award, however, confirms that the panel based its findings on the roof defects and did not itemize damages for rip-and-tear costs. *Condon v. Wood Grp. Logging Servs., Inc.*, No. H-6-2193, 2007 WL 2330131, at *8 (S.D. Tex. Aug. 14, 2007) ("Allegations and attorney arguments without supporting evidence are not sufficient to preclude summary judgment.").

The court finds that Liberty's policies cover the cost of repairing the ceiling tiles, as Liberty concedes, and not the costs associated with repairing or replacing the stucco or the roof,

including loss-of-use or rip-and-tear damages.[4] (Docket Entry No. 50 at 12 ("To be clear, it is not [Liberty's] position that damage to other portions of the property caused by the defective roof, such as damage to ceiling tiles as the result of leaks, does not constitute property damage.")).

### C. Whether Liberty's Policies Cover Ceiling-Tile Damages Awarded in Arbitration

Liberty argues that because the award does not make a separate finding for repairing or replacing damaged ceiling tiles, the court should find that Liberty is not liable for any awarded damages, even those for ceiling tiles. (Docket Entry No. 56 at 5–6).

Liberty is correct that the award does not distinguish between ceiling-tile and roof-repair costs. (*See* Docket Entry No. 36-15 at 7–8). It states that Descon Construction must pay $364,556 for "[r]oof replacement including structural repairs and ceiling tiles." (*Id.*). Because there is an inadequate basis to resolve whether Liberty is liable for the cost of repairing or replacing damaged ceiling tiles, the parties may conduct limited discovery[5] to determine how much of the $364,556 compensates Edinburg for these costs. *DP Eng'g*, 827 F.3d at 430; *Puget*,

---

[4] This ruling is consistent with authority from other jurisdictions that either preclude coverage for the cost of repairing faulty workmanship or limit the circumstances under which it can be "damages because of property damage." *See, e.g.*, *Greystone Constr., Inc. v. Nat'l Fire & Marine Ins. Co.*, 661 F.3d 1272, 1286 (10th Cir. 2011) (interpreting Colorado law); *French v. Assurance Co. of Am.*, 448 F.3d 693, 703 (4th Cir. 2006) (interpreting Maryland law); *Drake-Williams Steel, Inc. v. Cont'l Cas. Co.*, 883 N.W.2d 60, 66–67 (Neb. 2016); *Taylor Morrison Servs., Inc. v. HDI-Gerling Am. Ins. Co.*, 746 S.E.2d 587, 591–92 (Ga. 2013); *Capstone Bldg. Corp. v. Am. Motorists Ins. Co.*, 67 A.3d 961, 982 (Conn. 2013); *Crossmann Communities of N.C., Inc. v. Harleysville Mut. Ins. Co.*, 717 S.E.2d 589, 593 (S.C. 2011); *U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So.2d 871, 889 (Fla. 2007); *Travelers Indem. Co. of Am. v. Moore & Assocs., Inc.*, 216 S.W.3d 302, 309–10 (Tenn. 2007); *Travelers Ins. Co. v. Eljer Mfg., Inc.*, 757 N.E.2d 481, 503 (Ill. 2001); *F & H Constr. v. ITT Hartford Ins. Co.*, 12 Cal. Rptr. 3d 896, 901–02 (Cal. Ct. App. 2004); *see also* WINDT, INSURANCE CLAIMS AND DISPUTES § 11.1 (6th ed. 2019).

[5] According to Edinburg, Liberty's expert opined that fixing damaged ceiling tiles would cost $15,000. (Docket Entry No. 45 at 5). Edinburg's expert estimated that repairing the ceiling tiles would cost $112,000. (*Id.* at 6).

532 F.3d at 404. The parties may then cross-move for summary judgment on whether Liberty is liable for all or part of that amount.

## IV. Conclusion

Liberty's summary judgment motion is granted and denied in part. (Docket Entry Nos. 36, 41). The motion is granted to the extent that Liberty is not liable for stucco- or roof-replacement costs. The motion is denied, without prejudice, as to Liberty's liability for ceiling-tile damages. Edinburg's cross-motion for summary judgment is denied, with prejudice, on coverage because the policies cover only ceiling-tile damages. (Docket Entry No. 45). Edinburg's cross-motion is denied, without prejudice, as to Liberty's liability for damaged ceiling tiles. Century's cross-motion for summary judgment is denied as moot. (Docket Entry No. 44). By **August 9, 2019**, the parties must jointly submit an amended scheduling and docket control order setting a schedule for discovery and summary judgment briefing on the limited issue of ceiling-tile damages, proposing a limited number of depositions and written interrogatories. The parties must appear for a status conference on **August 23, 2019 at 2:00 p.m.**

SIGNED on July 12, 2019, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge